LORIN J. STEINES AND JANE E. STEINES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Steines v. Commissioner
Docket No. 25456-89.
United States Tax Court
T.C. Memo 1992-342; 1992 Tax Ct. Memo LEXIS 361; 63 T.C.M. (CCH) 3142; June 15, 1992, Filed *361 Decision will be entered under Rule 155. Lorin J. Steines and Jane E. Steines, pro sese. Vijay S. Rajan, for respondent. GERBER
GERBER
MEMORANDUM OPINION [1]
GERBER, Judge: Respondent determined income tax deficiencies in the amounts of $ 6,020 and $ 4,016, respectively, for petitioners' 1986 and 1987 taxable years. Respondent also determined that petitioners were liable for additions to tax under section 6653(a)(1)(A) [2] in the amounts of $ 301.05 and $ 200.80, respectively, for petitioners' 1986 and 1987 taxable years. Section 6653(a)(1)(B), for an additional 50 percent of the interest on any deficiency determined, would also apply if the addition under section 6653(a)(1)(A) is found to be due for either taxable year. Finally, respondent determined a $ 1,505.25 addition to tax under section 6661 for petitioners' 1986 taxable year. *362 We consider here whether petitioners have shown their entitlement to various claimed deductions and whether petitioners are liable for the additions to tax. General Findings
The parties have stipulated facts and exhibits which are incorporated by this reference. Petitioners resided in Moline, Illinois, at the time their petition was filed in this case. Petitioner Lorin J. Steines (petitioner) was employed full time by John Deere Harvester Works of Deere & Co. where he was paid wages of $ 54,205.52 and $ 57,222.40 for 1986 and 1987, respectively. During that same period, petitioners engaged in a business activity, which they described as sales and management-insurance and securities. The activity was a combination of a motivational sales pyramid program and insurance and financial consultation. The central organization, which used the name "A.L. Williams", would attempt to sell services to and then recruit and train individuals in the area of insurance-related and financial products. These individuals, in turn, would attempt to sell to and then train and recruit other individuals. The recruiter would become a sales manager, and his customer/recruits would become salespeople *363 from whom the recruiter would financially benefit. An example of the type of service and advice provided might include advice to convert from a whole life insurance policy to term life insurance. The cash surrender value and reduced premiums from the conversion of the whole life insurance would be invested in other financial products. Similar approaches included refinancing of home mortgages to withdraw equity for other investment purposes. Petitioners operated this business out of their residence. Additionally, they claimed to have used a garage associated with petitioner's brother's residence, which was situated next door. For 1986, petitioners reported $ 9,912.50 of gross income and various deductions for an overall claimed loss of $ 19,710.17. For 1987, petitioners reported gross income of $ 19,451 and various deductions sufficient to reduce the net profit to $ 1,406. Respondent disallowed the following expenses or deductions claimed in connection with petitioners' business activity: Item
1986
1987
Rent expense
$ 18,735
$ 8,085
Car and truck expense
2,708
1,552
Utilities expense
1,206
1,606
Totals
$ 22,649
$ 11,243
These amounts were disallowed *364 because petitioners failed to substantiate them and because petitioners had not shown that they were incurred in a trade or business. We find that petitioners were engaged in a business activity. Respondent also disallowed a $ 1,532 deduction claimed for 1987 as mortgage interest. Utility Expenses
Section 280A may limit the deduction of expenses regarding an office in the home. To be eligible for a home office deduction, a taxpayer must establish that the portion of the home that was used for business was (1) exclusively used, (2) on a regular basis, (3) as the principal place of business. . During 1986 and 1987, petitioners incurred utility expenses for their residence of $ 1,339 and $ 1,785, respectively. Petitioners claimed a substantial percentage of the utilities because of their claim that a substantial portion of their residence was exclusively used for their business activity. The residence is a two-story building with a finished basement. Petitioners did not use the basement (which contained about 560 square feet) for business purposes. The second story contained about 500 square feet, of *365 which petitioners exclusively and regularly used 120 square feet for business purposes. The first story contained somewhat more than 1,000 square feet. Although petitioners used the largest room on the first level (about 490 square feet) for clients, that room was not exclusively used for business. That large room contained regular furniture and household electronics, such as a stereo, tape player, television, etc. That room was not isolated from the other living quarters on the first level and was accessible from the kitchen and master bedroom. Approximately 7 percent of petitioners' residence was exclusively and regularly used for business purposes. Petitioners are entitled to a deduction for the utilities in the amount of $ 93.73 (7% x $ 1,339) for 1986 and $ 124.95 (7% x $ 1,785) for 1987. Rental Expenses
Petitioners claimed rental expenses of $ 18,735 and $ 8,085 for 1986 and 1987, respectively. Petitioners bear the burden of proof with respect to these adjustments. ; ; Rule 142(a). As part of the claimed rental expenses, petitioners *366 contend that they paid $ 750 per month to Loras Steines (Loras), petitioner's twin brother, to lease his garage associated with Loras' house located next door to petitioners'. The garage contained about 600 square feet. The garage contained Loras' personal property valued at $ 8,500. During 1986 and 1987, a garage in the Moline, Illinois, area rented for about $ 20 $ 40 per month. Petitioners contend that the remainder of the claimed rental expenses are attributable to the rental of lists of names from petitioner's twin brother. Ostensibly, these lists related to prospective customers. Allegedly, that agreement was for $ 10,000, payable $ 2,000 per month beginning August 1986. No credible evidence was offered to corroborate the testimony of petitioner or Loras regarding these claimed expenditures. Loras' testimony was not credible. Loras did not report any of the alleged rental payments on his 1986 or 1987 Federal tax returns. The documents offered by petitioners in support of these claimed deductions are of suspicious origins, are likely not contemporaneous, and may have been fabricated for purposes of trial. We hold that petitioners did not provide any credible evidence *367 in support of their claimed rental expenses and have therefore failed to carry their burden of proof. Accordingly, petitioners are not entitled to any amount of the claimed rental deductions for 1986 or 1987. Remaining Deductions
Here, again, petitioners bear the burden of proving their entitlement to the claimed deductions. With respect to the car and truck and mortgage interest items disallowed by respondent, petitioners did not offer any evidence, including testimony, in support of their claimed deductions. With respect to these items and all deductions, petitioners claim that they are unable to substantiate the claimed and disallowed deductions because their records were in Loras' garage and the Veterans' Administration took possession of the garage and its contents. On this point, petitioner's and Loras' testimony was inconsistent and generally not credible. At one point, petitioner testified that he kept records of his business at his residence, and at another point he claimed that all the records were taken by the Veterans' Administration from his brother's garage. Loras, on the other hand, claimed that he received cash payments for rent and that he had given *368 original receipts to petitioner. At trial, petitioner offered copies of receipts, claiming that the originals were in the garage when the Veterans' Administration took possession. Respondent called a witness from the State's attorney's office and a real estate broker who represented the Veterans' Administration at the foreclosure and eviction proceeding of Loras from his residence. Loras and petitioner were provided an opportunity to remove any personal property from the garage, but they did not do so. Petitioner has conveniently used this excuse in an attempt to exculpate his failure to keep records or in an attempt to fabricate an explanation for the disappearance of documents that may never have existed. In either event, we find petitioners' offering insufficient to carry their burden of proof. Additions to Tax
Respondent determined additions to tax under section 6653(a)(1)(A) and (B) for the 1986 and 1987 taxable years. Respondent also determined an addition to tax under section 6661 for petitioners' 1986 taxable year. Petitioners bear the burden of proof with respect to such determinations. Rule 142(a); ; *369 ; . Negligence, within the meaning of section 6653(a), has been defined as the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . Petitioners claimed deductions for so-called rental expenses which were never paid and, even if paid, were obviously excessive in amount. For example, petitioner claimed a $ 750 monthly rental expense allegedly paid to his twin brother for rental of a 600-square-foot garage in a residential neighborhood where such garages could have been rented for $ 40 or under per month. Additionally, petitioners failed to keep proper records regarding the deductions, and they claimed an excessive percentage of utility expenses. Accordingly, we find that petitioners are liable for additions to tax under section 6653(a)(1)(A) and (B) on the entire underpayment of tax for the taxable years 1986 and 1987. Respondent also determined an addition to tax for substantial understatement of tax under section 6661 for the *370 1986 taxable year. Section 6661 provides a 25-percent addition to tax if there is a substantial understatement of income tax. An understatement is "substantial" if it exceeds the greater of 10 percent of the tax required to be shown for the taxable year or $ 5,000. An "understatement" does not include an amount attributable to "the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment". Sec. 6661(b)(2)(B)(i). Additionally, an understatement does not include any item for which there was adequate disclosure. Sec. 6661(b)(2)(B)(ii). Petitioners have presented no evidence or argument concerning this addition to tax. Accordingly, the substantial understatement addition is applicable for the 1986 taxable year if the threshold understatement is exceeded. That determination will be made in connection with the Rule 155 computations. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. For convenience, our findings of fact and opinion are combined with respect to each issue as labeled throughout this opinion.↩
2. Section references are to the Internal Revenue Code in effect for the taxable years in issue. Rule references are to this Court's Rules of Practice and Procedure.↩